# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-11512

United States Court of Appeals
Fif h Circuit

**FILED**
June 20, 2017

Lyle W. Cayce
Clerk

In the Matter of: DENNIS H. BIRENBAUM,

> Debtor

BRIAN O'GRADY, M.D.; THE O'GRADY FAMILY PARTNERSHIP, LIMITED,

> Appellants

v.

DENNIS BIRENBAUM, M.D.,

> Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:15-CV-1898

Before HIGGINBOTHAM, GRAVES, and HIGGINSON, Circuit Judges.

PER CURIAM:*

This is a bankruptcy dispute between two doctors. Dr. Brian O'Grady, a neurosurgeon, lent $1,000,000 to Dr. Dennis Birenbaum, an oncologist, without ever having met him. Dr. Birenbaum failed to repay, then filed for

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

bankruptcy protection. Dr. O'Grady intervened in Dr. Birenbaum's bankruptcy proceeding and objected to the discharge of the $1,000,000-plus debt owed to him, claiming that it was obtained by fraud and therefore exempt from discharge. After a three-day evidentiary hearing, the bankruptcy court disagreed and overruled Dr. O'Grady's objection to discharge. The district court summarily affirmed. We affirm as well.

Dr. Birenbaum founded, owns, and operates a Dallas-area cancer center called Texas Hematology/Oncology Center, P.A. ("THOC"). In 2006, THOC found itself in dire financial trouble, operating at a net loss and showing a stockholders' equity of negative $6,500,000. In Dr. Birenbaum's words, THOC "desperately needed money." Dr. Birenbaum enlisted the help of a financial consultant named David Miller.

In early 2007, Miller approached Dr. O'Grady to seek his investment in THOC. Miller knew Dr. O'Grady, having previously advised Dr. O'Grady on financial matters. Dr. O'Grady had significant cash from the sale of his investment in a surgical center. Miller brought with him a package of information that he had compiled relating to THOC's finances. What documents were included and whether they painted an accurate financial picture of THOC are subject to dispute. Dr. O'Grady centers some of his fraud claims on alleged inaccuracies and omissions in this information.

After reviewing the information, Dr. O'Grady signed a contract presented to him by Miller called an "Art Purchase Agreement"—the peculiar instrument creating the debt at the heart of this dispute. Under the Art Purchase Agreement, Dr. O'Grady was immediately obligated to pay $1,000,000 to Dr. Birenbaum and THOC. After 90 days, Dr. O'Grady would then have the option either (A) to purchase certain art owned by Dr. Birenbaum for an additional $150,000, or (B) to receive his $1,000,000 back along with an additional $150,000. The Agreement calls the upfront $1,000,000

"earnest money" and the $150,000 additional return if Dr. O'Grady chose not to purchase the art "liquidated damages."

The Agreement contains a section titled "Representations and Warranties of Seller," stating that "Sellers represent and warrant that they own the Art free and clear of all debts and encumbrances, and that the security interest of Buyer will be a first lien position." It also states that "Buyer may fully rely upon the representations, warranties, and covenants made to Buyer in this Agreement and on the accuracy of any document, certificate, or other instrument given or delivered to Buyer pursuant to this Agreement." Despite this representation, Dr. O'Grady offered evidence that the art in question was subject to a lien in favor of a company called Siemens Financial Services, Inc. ("Siemens") at the time of the Agreement.

On the same day, Dr. O'Grady also executed a "Security Agreement" that purported to create a lien in favor of Dr. O'Grady on all of Dr. Birenbaum's "[a]rt, accounts, accounts receivable, equipment, general intangibles, goods, fixtures, health care insurance receivables, inventory, instruments, investment property, and the proceeds thereof." Dr. O'Grady never recorded or otherwise perfected this "lien." That Security Agreement included the provision that "Debtors agree not to . . . [s]ell, transfer, or encumber any of the Collateral, except in the ordinary course of Debtor's business." Despite this representation, Dr. O'Grady offered evidence that Dr. Birenbaum was negotiating with a company called TAC to sell some of the artwork around the same time that Miller solicited Dr. O'Grady; that negotiation eventually resulted in a final sale of some of the art.

After Dr. O'Grady had executed the Art Purchase Agreement, a $1,300,000 judgment was entered against Dr. Birenbaum in an unrelated contract action, and within a week of that judgment, that plaintiff applied for

No. 16-11512

turnover of THOC stock. Dr. O'Grady now bases his fraud claim in part on Dr. Birenbaum's failure to disclose this fact to him.

Pursuant to the Agreement, Dr. O'Grady transferred $1,000,000 to Dr. Birenbaum. Thereafter, to make an informed decision whether to exercise his option to buy the art, Dr. O'Grady looked up art valuation on the internet, called some storage facilities, spoke with his art collector friends, and spoke with the appraisers who had evaluated Dr. Birenbaum's art collection. Ultimately, he settled on declining the option to purchase the art and instead asked for his $1,000,000 back (plus the additional $150,000). Dr. Birenbaum and THOC have not paid any of the $1,150,000 due to Dr. O'Grady under the Agreement.[1]

Dr. O'Grady sued Dr. Birenbaum and THOC in Texas state court and obtained injunctions against them from selling any of the art. However, while that state-court action was pending, Dr. Birenbaum filed for Chapter 7 bankruptcy protection—the case currently before the court. Dr. O'Grady intervened and filed a proof of unsecured claim with the bankruptcy court.[2] He then filed an adversary complaint seeking a determination that the $1,150,000 owed to him was excepted from discharge under 11 U.S.C. § 523(a)(2)(A) & (B), two provisions making nondischargeable debt resulting from fraud. Dr. Birenbaum denied any fraud.

---

[1] Dr. O'Grady may have been partially compensated for this loss through settlements reached in other lawsuits against Dr. O'Grady's own financial advisor and Dr. Birenbaum's accountant. One of Dr. Birenbaum's arguments in the bankruptcy court was that these collateral sources of compensation offset any nondischargeable debt he owed. However, the bankruptcy court did not reach the issue, and neither do we.

[2] Previously, Dr. O'Grady had intervened in THOC's Chapter 11 bankruptcy proceeding and filed a proof of *secured* claim, but the bankruptcy court ruled that Dr. O'Grady did not possess a valid lien on the artwork. In the instant case, Dr. Birenbaum's personal bankruptcy, Dr. O'Grady recognizes that he is bound by that prior judgment and asserts only an unsecured claim.

No. 16-11512

After hearing the testimony of three witnesses—the doctors themselves and Dr. Birenbaum's accountant—over three days, the bankruptcy court found that neither exception applied to bar discharge. Dr. O'Grady appealed to the district court, which summarily affirmed. He timely appealed to this court.

"Generally, a bankruptcy court's findings of fact are reviewed for clear error and conclusions of law are reviewed de novo."[3] "However, for a 'mixed question of law and fact,' the 'factual premises' are reviewed for clear error but the ultimate 'legal conclusion' is reviewed de novo."[4]

Upon careful review of the record, the findings of the bankruptcy court, the applicable law, and the arguments of the parties, we detect no clear error in the bankruptcy court's rejection of Dr. O'Grady's claims. For that reason, we affirm the judgment of the district court, which in turn affirmed the judgment of the bankruptcy court.

---

[3] *In re Renaissance Hosp. Grand Prairie Inc.*, 713 F.3d 285, 294 (5th Cir. 2013) (quoting *In re Gerhardt*, 348 F.3d 89, 91 (5th Cir. 2003)).

[4] *Id.* (quoting *Whitehouse Hotel Ltd. P'ship v. C.I.R.*, 615 F.3d 321, 333 (5th Cir. 2010)).